UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| SHANNON JENKINS, | : : : | |
| Plaintiff, | : : : | Case No._____ |
| v. | : : : : : | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CHIASMA, INC., SCOTT MINICK, JOHN F. THERO, RONI MAMLUK, DAVID STACK, JOHN A. SCARLETT, TODD FOLEY, BARD GEESAMAN, and RAJ KANNAN, | : : : : : : | JURY TRIAL DEMANDED |
| Defendants. | : : : : : | |

-------------------------------------------------------------------------

Plaintiff Shannon Jenkins ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.       This action is brought by Plaintiff against Chiasma, Inc. ("Chiasma" or the "Company") and the members of Chiasma's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Chiasma will be acquired by Amryt Pharma plc ("Amryt") through Amryt's subsidiary Acorn Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On May 5, 2021, Chiasma and Amryt issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated May 4, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Chiasma shareholders will receive 0.396 Amryt American depositary shares ("ADSs"), with each ADS representing the right to receive five Amryt ordinary shares, for each share of Chiasma common stock they own (the "Merger Consideration"). Based on the fixed exchange ratio, Amryt shareholders prior to the transaction will own approximately 60% of the combined company and Chiasma shareholders prior to the transaction will own approximately 40%. The Proposed Transaction is valued at approximately $330 million.

3.     On July 2, 2021, Chiasma filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Chiasma stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Duff & Phelps; and (ii) potential conflicts of interest faced by the Company's additional financial advisor, Torreya Capital, LLC ("Torreya"). The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Chiasma stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.     In short, unless remedied, Chiasma's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Chiasma's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

<h2 style="text-align:center">THE PARTIES</h2>

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Chiasma.

9.      Defendant Chiasma is a Delaware corporation, with its principal executive offices located at 140 Kendrick Street, Building C East, Needham, Massachusetts 02494.  Chiasma is a commercial stage biopharmaceutical company focused on developing and commercializing oral therapies to improve the lives of patients who face challenges associated with their existing

treatments for rare and serious chronic diseases.  Chiasma's shares trade on the Nasdaq Global Select Market under the ticker symbol "CHMA."

10.     Defendant Scott Minick ("Minick") has been a director of the Company since October 2007.

11.     Defendant John F. Thero ("Thero") has been a director of the Company since November 2015.

12.     Defendant Roni Mamluk ("Mamluk") has been a director of the Company since June 2017.

13.     Defendant David Stack ("Stack") has been Chairman of the Board and a director of the Company since November 2014.

14.     Defendant John A. Scarlett ("Scarlett") has been a director of the Company since February 2015.

15.     Defendant Todd Foley ("Foley") has been a director of the Company since May 2008.

16.     Defendant Bard Geesaman ("Geesaman") has been a director of the Company since 2004.

17.     Defendant Raj Kannan ("Kannan") has been President of the Company since January 2021, and Chief Executive Officer ("CEO") and a director since June 2019.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Amryt is a public limited company incorporated under the laws of England and Wales.  Amryt is a global commercial-stage biopharmaceutical company focused on acquiring,

developing and commercializing innovative treatments to help improve the lives of patients with rare and orphan diseases.  Amryt's commercial business comprises two orphan disease products – metreleptin (Myalept/ Myalepta) and lomitapide (Juxtapid/Lojuxta).

20.    Merger Sub is a Delaware corporation and an indirect wholly owned subsidiary of Amryt.

SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.    Chiasma is a commercial-stage biopharmaceutical company focused on improving the lives of patients who face challenges associated with their existing treatments for rare and serious chronic disease. Employing Chiasma's proprietary Transient Permeability Enhancer ("TPE") technology platform, Chiasma seeks to develop oral medications that are currently available only as injections.  In June 2020, the U.S. Food and Drug Administration ("FDA") approved MYCAPSSA (octreotide capsules) for long-term maintenance treatment in acromegaly patients who have responded to and tolerated treatment with octreotide or lanreotide.  Chiasma commenced its U.S. commercial launch of MYCAPSSA in September 2020.  MYCAPSSA is the first and only oral somatostatin analog ("SSA") approved by the FDA and the first product approved by the FDA utilizing Chiasma's TPE technology.  The FDA approval of MYCAPSSA was based on the positive results of Chiasma's randomized, double-blind, placebo-controlled, nine-month Phase 3 CHIASMA OPTIMAL clinical trial of octreotide capsules, which met the primary endpoint and all four secondary endpoints, as well as safety data from all of its Phase 3 clinical trials of MYCAPSSA.  Chiasma is focused on the commercialization of MYCAPSSA for the treatment of patients with acromegaly in the United States and continuing its development and seeking regulatory approval of MYCAPSSA in the European Union.

22.     On May 5, 2021, the Company announced its first quarter 2021 financial results

and business developments.  Net product revenue related to the sales of MYCAPSSA were $1.9

million for the first quarter of 2021, as compared to $1.0 million for the fourth quarter of 2020,

MYCAPSSA's first full quarter of sales.  Research and development expenses were $4.2 million

for the first quarter of 2021 compared to $8.1 million for the first quarter of 2020.  Commenting

on the Company's results, defendant Kannan stated:

> While we continue to experience customer access challenges related to COVID-19,
> we are pleased with the launch progress we made in the first quarter and it reiterates
> our intent of making MYCAPSSA the new standard of pharmacological care
> During the quarter we saw an increase in launch momentum as we continued to
> expand payor coverage for MYCAPSSA.  Additionally, we submitted an IND to
> begin the process of expanding the potential benefits of MYCAPSSA in patients
> with carcinoid syndrome.

**The Proposed Transaction**

23.     On May 5, 2021, Chiasma and Amryt issued a joint press release announcing the

Proposed Transaction, which states, in relevant part:

> DUBLIN, Ireland, and Boston MA, May 5, 2021, Amryt (Nasdaq: AMYT, AIM:
> AMYT), a global, commercial-stage biopharmaceutical company dedicated to
> acquiring, developing and commercializing novel treatments for rare diseases,
> today announces that it has signed a definitive agreement to acquire Chiasma, Inc.
> (Nasdaq: CHMA) in an all-stock combination. The combined company will be a
> global leader in rare and orphan diseases with three on-market commercial
> products, a global commercial and operational footprint and a significant
> development pipeline of therapies with the financial flexibility to execute its growth
> plans. The transaction has been approved and recommended by the Boards of both
> Amryt and Chiasma.
>
> Under the terms of the transaction, each share of Chiasma common stock issued
> and outstanding prior to the consummation of the transaction will be exchanged for
> 0.396 Amryt American Depositary Shares ("ADSs"), each representing five Amryt
> ordinary shares. As of the close of trading on May 4, 2021 Amryt's ordinary shares
> on AIM were £2.00 ($2.78) per share and Amryt's ADS's on Nasdaq were $12.95
> (£9.31) per ADS.
>
> Amryt already has in place the infrastructure, expertise and the financial flexibility
> to realize the full potential of MYCAPSSA® globally and further develop life-cycle

management opportunities to expand the benefits of MYCAPSSA® to other patient populations including NET. The transaction is expected to accelerate and diversify Amryt's growing revenues and Amryt expects to deliver estimated annual cost synergies of approximately $50M.

**Dr. Joe Wiley, Chief Executive Officer of Amryt, commented:** *"We are really excited by today's news and are looking forward to welcoming the Chiasma team to Amryt. Amryt has grown significantly in the past six years and our success to date is due to the phenomenal commitment and drive of the Amryt team. This transaction brings together two teams that have a strong track record of execution and passion for developing therapies that can help improve the lives of patients in need. The addition of MYCAPSSA®, which was recently launched in the US, to our commercial product portfolio represents a strong strategic, operational and commercial fit given the significant call-point overlap that exists across our portfolio.*

*This deal further solidifies our position as a global leader in treating rare and orphan conditions. The combined business will have three approved commercial products and an exciting pipeline of development assets. Our lead development candidate, Oleogel-S10, is currently progressing through the regulatory process in the US and EU and, if approved, will bring our portfolio of commercial products to four. We see significant revenue growth opportunities for MYCAPSSA® in acromegaly and are also very excited to further develop the potential for MYCAPSSA® in patients with carcinoid symptoms stemming from NET where we believe the commercial opportunity is significant. With the addition of NET, our combined pipeline will have four product candidates in late clinical stages as well as our exciting pre-clinical gene therapy asset, AP103 in dystrophic Epidermolysis Bullosa ("EB").*

*The proposed transaction will leverage our track record of successful integration and significantly enhance our future growth plans in highly attractive markets globally. With this transaction, we believe that we can continue the strong growth trajectory already underway at Amryt and have the financial strength to execute our future growth plans."*

**Raj Kannan, Chief Executive Officer of Chiasma commented:** *"I am incredibly proud of what the team at Chiasma has been able to accomplish and we look forward to joining Amryt in continuing to focus on making the lives of patients with rare diseases better. The merger with Amryt allows the combined company to significantly leverage the operational efficiencies in successfully commercializing MYCAPSSA® globally and expand the potential benefits of MYCAPSSA® to other patients with unmet needs. The combined business has significant potential to further enhance shareholder value with a diversified portfolio of both marketed products and a meaningful late-stage pipeline that could potentially drive future growth opportunities. I am confident that this combination with Amryt, given their*

*track record of success, positions us well to deliver long-term value for our patients and for our shareholders."*

\* \* \*

**Transaction Overview**

- Recommended acquisition of Chiasma by Amryt in an all-stock transaction
- Chiasma shareholders will receive 0.396 Amryt ADSs for each share of Chiasma common stock, subject to rounding for fractional shares. As of the close of trading on May 4, 2021 Amryt's ordinary shares on AIM were £2.00 ($2.78) per share and Amryt's ADS's on Nasdaq were $12.95 (£9.31) per ADS.
- Based on the fixed exchange ratio, Amryt shareholders prior to the transaction will own approximately 60% of Amryt post transaction and Chiasma shareholders prior to the transaction will own approximately 40% of Amryt post transaction.
- Chiasma's existing royalty interest financing agreement expected to be fully repaid on closing delivering a high margin unencumbered asset to Amryt's portfolio
- Transaction is endorsed and supported by voting agreements with lead shareholders - Athyrium Capital Management LP, Highbridge Capital Management and MPM Capital
- Transaction is subject to the approval of Amryt and Chiasma shareholders and other customary closing conditions, including regulatory approvals
- Subject to the satisfaction or waiver of closing conditions, the transaction is expected to close in Q3 2021

**Listing, Governance and Management**

- Amryt is currently listed on Nasdaq (AMYT) and AIM in London (AMYT) and will be the publicly quoted company following closing
- Amryt's global headquarters will remain in Dublin, Ireland and its US headquarters will remain in Boston, Massachusetts
- The Amryt team will continue to be led by Dr Joe Wiley, CEO of Amryt
- Raj Kannan, CEO of Chiasma, is expected to join the Board of Amryt on closing of the transaction, subject to regulatory approval. Chiasma will nominate one additional director to join the Board of Amryt, to be confirmed on closing.

**Advisors to Amryt**

Moelis & Company LLC is serving as exclusive financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal advisor to Amryt in this transaction. Shore Capital is acting as NOMAD and Joint Broker to Amryt.

**Advisors to Chiasma**

Torreya Capital LLC is serving as financial advisor and Goodwin Procter LLP is serving as legal advisor to Chiasma. Chiasma's Board of Directors was provided a fairness opinion by Duff & Phelps.

## Insiders' Interests in the Proposed Transaction

24.    Chiasma insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Chiasma.

25.    Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Amryt.  Upon consummation of the Proposed Transaction, all vested and unvested Company options will be converted into the right to receive the Merger Consideration.   The following tables set forth the value of Chiasma options held by Company insiders:

| Name | Unvested Chiasma Stock Options (#) | Value of Unvested Chiasma Stock Options ($)[1] |
|---|---|---|
| Raj Kannan | 908,334 | — |
| Anand Varadan | 390,626 | — |
| John Doyle | 175,000 | 24,500 |
| William Ludlam, M.D., Ph.D. | 197,568 | 35,478 |
| Lee Giguere | 192,190 | — |
| Drew Enamait | 137,842 | 21,051 |

26.    In addition, if they are terminated in connection with the Proposed Transaction, Chiasma insiders stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash Severance ($) | Health Continuation ($) |
|---|---|---|
| Raj Kannan | 1,389,419 | 44,050 |
| Anand Varadan | 697,107 | 29,367 |
| John Doyle | 597,647 | 29,367 |
| William Ludlam, M.D., Ph.D. | 658,763 | 29,367 |
| Lee Giguere | 303,293 | 14,683 |
| Drew Enamait | 262,358 | 14,683 |

## The Proxy Statement Contains Material Misstatements and Omissions

27.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Chiasma's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

28.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial analyses performed by the Company's financial advisor Duff & Phelps; and (ii) the potential conflicts of interest faced by the Company's additional financial advisor, Torreya.

***Material Omissions Concerning Duff & Phelps' Financial Analyses***

29.     The Proxy Statement also describes Duff & Phelps' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Duff & Phelps' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Chiasma's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Duff & Phelps' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

30.     With respect to Duff & Phelps' *Chiasma Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 12% to 14%; (ii) quantification of the terminal value for the Company; and (iii) Chiasma management's basis for assuming a perpetuity rate of decline of 20% for Chiasma's free cash flow after 2030.

31.     With respect to Duff & Phelps' *Combined Company Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (ii) quantification of the terminal value for the combined company; and (iii) Chiasma management's basis for assuming a perpetuity rate of decline of 20%.

32.     With respect to Duff & Phelps' *Historical Premium Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

33.     The omission of this information renders the statements in the "Certain Prospective Financial Information Reviewed by the Chiasma Board and Its Financial Advisor" and "Opinion of the Chiasma Board's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Torreya's Potential Conflicts of Interest***

34.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by one of the Company's financial advisors, Torreya.

35.     The Proxy Statement sets forth that:

Chiasma has paid Torreya for its services as the financial advisor to Chiasma in connection with the transaction a retainer fee of $50,000, upon execution of its engagement letter, and has agreed to pay Torreya a transaction fee, which is contingent upon successful completion of the transaction. The transaction fee is currently estimated, based on the information available as of the date of announcement, to be between approximately $8.0 million and $10.0 million. Chiasma also has agreed to reimburse Torreya for its expenses incurred in connection with Torreya's engagement and to indemnify Torreya and its subsidiaries, parents, affiliates and their respective successors and assigns against certain liabilities arising out of Torreya's engagement.

Proxy Statement at 90.  The Proxy Statement, however, fails to disclose whether Torreya has

performed any prior services for or received any compensation from any parties to the Merger

Agreement.

36.     Full disclosure of investment banker compensation and all potential conflicts is

required due to the central role played by investment banks in the evaluation, exploration,

selection, and implementation of strategic alternatives.

37.     The omission of this information renders the statements in the "Torreya Capital,

LLC" section of the Proxy Statement false and/or materially misleading in contravention of the

Exchange Act.

38.     The Individual Defendants were aware of their duty to disclose the above-

referenced omitted information and acted negligently (if not deliberately) in failing to include this

information in the Proxy Statement.  Absent disclosure of the foregoing material information prior

to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of

Chiasma will be unable to make a sufficiently informed voting decision in connection with the

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive

relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

39.     Plaintiff repeats all previous allegations as if set forth in full.

40.     During the relevant period, defendants disseminated the false and misleading Proxy

Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.   The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about Duff & Phelps' financial analyses and Torreya's potential conflicts of interest.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

43.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

45.     Plaintiff repeats all previous allegations as if set forth in full.

46.     The Individual Defendants acted as controlling persons of Chiasma within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers and/or directors of Chiasma, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

49.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, Chiasma stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Chiasma, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Chiasma stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  July 16, 2021                                    **WEISSLAW LLP**


By   *s/ Richard A. Acocelli*
<u>                                                    </u>
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*